UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE ANTHONY BELL,

        Plaintiff,

Case No. 1:07-cv-876

Hon. Gordon J. Quist

vs.

PATRICIA CARUSO, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Michigan Department of Corrections (MDOC) Director Patricia Caruso, Warden Mary Berghuis, Deputy Warden Rick Smith, Assistant Deputy Warden Bobbi Smith, Assistant Resident Supervisor (ARUS) Joniva Scrivens, Grievance Coordinator Jeff Minnerick, Resident Unit Officer (RUO) Johnny Winters and Storekeeper Barbara Allen (docket no. 41).

    **I.**    **Background**

Plaintiff's allegations arise from events that occurred at E. C. Brooks Correctional Faclity (LRF) and can be summarized as follows. Sometime in December 2006, plaintiff's laundry bag was sent to be washed at the Michigan State Industries (MSI). *See* Amend. Compl. at ¶ 13. When the bag was returned to plaintiff's unit, it was open and items were missing. *Id.* Plaintiff informed defendant RUO Winters of both the condition of the bag and the missing items. *Id.* Winters told plaintiff to fill out a quartermaster kite. *Id.* at ¶ 14. When plaintiff was called into the quartermaster's office, defendant Allen, a Storekeeper at the correctional facility, told plaintiff that

he would have to pay for the missing clothing. *Id.* at ¶ 15. Plaintiff filed a grievance on January 26, 2007, stating that he no longer possessed the proper amount of clothing to maintain his hygiene. *Id.* at ¶ 16. On February 18, 2007, defendant ARUS Scrivens conducted a hearing, at which plaintiff was found to have violated a policy and would be required to pay for the missing clothing. *Id.* at ¶ 18. In a separate matter, plaintiff alleges that on May 31, 2007, defendant Scrivens gave orders to remove the legal materials from plaintiff's cell after plaintiff mailed copies of a complaint to another prisoner. *Id.* at ¶ 24.

The gist of plaintiff's claims are set forth in his "issues" for declaratory judgment on pages 4 and 5 of the amended complaint.[1] First, plaintiff alleges that his "inhumane treatment" by defendants violated the Eighth Amendment. Second, he alleges that defendants RUO Winters, Storekeeper Allen, Deputy Warden Rick Smith, Assistant Deputy Warden Bobbi Smith, and MDOC Director Caruso failed to take proper action to "curb" his inhumane treatment and failed to enforce departmental rules. Third, he alleges that ARUS Scrivens' actions in conducting an administrative hearing was a violation of due process under the Fourteenth Amendment and retaliation in violation of the First Amendment. Fourth, plaintiff contends that defendants Assistant Deputy Warden Bobbi Smith, Deputy Warden Rick Smith, Warden Berghuis and MDOC Director Caruso violated his Eighth Amendment rights when they failed to provide adequate clothing so that plaintiff could

---

[1] On November 5, 2007, the court ordered plaintiff to file an amended complaint on the form provided by the court. Contrary to the court's order, plaintiff provided his own form (docket no. 19) and a 14-page "Brief in support of amended complaint" (docket no. 20). The court notes that plaintiff's amended complaint includes a "preliminary statement," which references "a conspiracy to extort money from an inmate in violation of the Fifth and Fourteenth Amendment and M.C.L. § 750.213." The court does not consider this "preliminary statement" to be a claim, because plaintiff does not set forth any allegations in the amended complaint that support either conspiracy or extortion. In addition, the amended complaint does not seek relief with respect to ARUS Scrivens' May 31, 2007 order to remove legal material from plaintiff's cell. Indeed, plaintiff admits in ¶ 13 of his affidavit in opposition to the motion for summary judgment (docket no. 50) that he did not exhaust the Step III grievance with respect to the loss of his legal material because it was returned.

always have a pair of pants to wear and a pair of pants to send to the laundry. Plaintiff seeks declaratory judgments, injunctions, compensatory damages and punitive damages arising from these actions.

## II. Legal Standards

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Plaintiff's failure to exhaust administrative remedies

Defendant Scrivens has moved for summary judgment on the ground that plaintiff's claims against her are unexhausted. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[2] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral

---

[2]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U.

MDOC's Manager of Grievance and Appeals, identified the four grievances filed by plaintiff and exhausted through the Step III appeal: LRF 2007-01-0182-19g; LRF 2007-02-0333-28a; IBC 2007-06-1878-03c; and IBC 2007-09-2774-17b. James Armstrong Aff. attached to defendants' brief as Exh. 9. *Id.* Defendant Scrivens contends that plaintiff did not name Scrivens in any grievances related to the laundry. The court's review of this issue is hampered because the

5

copies of the grievances attached to defendants' brief, in particular the grievances filed at LRF, are extremely poor and largely illegible. However, ARUS Scrivens' name appears in at least one Step I grievance relating to his laundry dispute, LRF 2007-02-0333-28a. *See* Exh. 8-E attached to defendants' brief. Defendant Scrivens has failed to meet her burden under Fed. R. Civ. P. 56. Accordingly, Scrivens' motion for summary judgment for lack of exhaustion should be denied.

### IV. Plaintiff's § 1983 claims

#### A. MDOC Director Caruso, Warden Berghuis, Deputy Warden Rick Smith, Assistant Deputy Warden Bobbi Smith, and Grievance Coordinator Jeff Minnerick.

Plaintiff claims that Director Caruso, Deputy Warden Rick Smith and Assistant Deputy Warden Bobbi Smith failed to take proper actions to curb the "inhumane treatment" taken against him and failed to uphold departmental rules. Plaintiff also claims that Director Caruso, Warden Berghuis, Deputy Warden Rick Smith and Assistant Deputy Warden Bobbi Smith failed to provide plaintiff with adequate clothing. While plaintiff named Grievance Coordinator Jeff Minnerick as a defendant, he does not claim that Minnerick engaged in the alleged "inhumane treatment." The only specific allegations asserted against these five defendants is that Deputy Warden Rick Smith denied a Step I grievance, that Warden Berghuis denied a Step II grievance, and that Director Caruso denied a Step III grievance.

"Although pro se pleadings are to be liberally construed, courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Restaurant*, 22 Fed.Appx. 577, 578 (6th Cir. 2001). Here, plaintiff's amended complaint appears to allege that these five defendants failed to supervise MDOC personnel in providing clothes to plaintiff. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior.

6

*See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). There is no allegation that these five defendants directly participated in the constitutional deprivations alleged by plaintiff. Accordingly, defendants Caruso, Berghuis, Rick Smith, Bobbi Smith and Jeffery Minnerick are entitled to summary judgment.

### B. Plaintiff's Eighth Amendment claims against defendants RUO Winters, Storekeeper Allen and ARUS Scrivens

#### 1. Legal standard

Plaintiff alleges that defendants Winters, Allen and Scrivens were deliberately indifferent to his need for clothing as required by the Eighth Amendment. It is well established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, the Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation marks omitted). A viable Eighth Amendment claim consists of an objective and a subjective component. *Id.* at 834. A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine

discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

**2.     The parties' affidavits**

At some point in December 2006, plaintiff reported to RUO Winters that his laundry bag was returned open and that laundry was missing. Winters Aff. at ¶ 7, attached to defendants' brief as Exh. 5. Winters could not verify the validity of plaintiff's statement because the laundry bags are not examined and the contents of the bags are not inventoried. *Id.* at ¶ 7. When prisoners request replacement state-issued items, Winters tells them to complete a Prisoner Request for State Issued Items form (CSJ-251) and submit it to the Quartermaster. *Id.* at ¶ 8.

Defendant Allen is a Storekeeper at LRF, whose duties include the exchange of laundry for prisoners who ask for repairs and replacement of their state issued clothing. Allen Aff. at ¶ 1, attached to defendants' brief as Exh. 6. In December 2006, plaintiff was called out to Allen's work station for replacement of some of his state-issued clothing, which plaintiff said was not

8

returned to him after sending it out to be laundered. *Id.* at ¶ 3. Allen explained that when a laundry bag tears or opens prematurely, loose items from the bag are checked for a prisoner number, and then sent along with an LRF "Loose Laundry Report" to the housing unit to be given to the prisoner. *Id.* at ¶ 5. Allen told plaintiff that she had found no loose laundry (i.e., pants and athletic shorts) assigned to him, and that if he wanted new items, he would have to pay for them. *Id.* at ¶ 6.

On January 30, 2007, plaintiff filed a grievance indicating that sometime in December 2006, his laundry bag came open during the laundering process and clothing items were missing. Minnerick Aff. at ¶ 4, attached to defendants' brief as Exh. 8. Grievance Coordinator Minnerick interviewed plaintiff, who stated that all of the missing items had been replaced by the LRF quartermaster, with the exception of one pair of athletic shorts and one pair of state-issued blue pants. *Id.* After investigation, MDOC officials determined that plaintiff did not lose either of these items during the laundering process. *Id.* Specifically, the LRF Loose Laundry Reports for December 2006 (i.e., 12/8/06 and 12/13/06) show that the bag for plaintiff's cell was open, but that there were no blue pants or athletic shorts loose on either of those dates. *Id.* at ¶¶ 5-6.

Grievance Coordinator Minnerick explained that the Step I response to plaintiff's grievance LRF 07-01-00182-19g concluded that "A Notice of Intent to Conduct an Administrative Hearing should be completed by the appropriate housing unit staff so that the state may recoup the loss because the prisoner has not taken care of state issue items issued to him in a responsible manner." Minnerick Aff. at ¶ 7. In this case, a Notice of Intent to conduct an administrative hearing ("NOI") was issued on February 16, 2007. NOI, attached to defendants' brief as Exh. 8, attachment D-1.

ARUS Scrivens became aware of plaintiff's complaint of lost clothing in February 2007, after plaintiff filed a grievance on this matter. Scrivens Aff. at ¶ 3, attached to defendants' brief as Exh. 7. Plaintiff's property was shaken down shortly after receiving the grievance in an effort to determine the validity of his complaint. *Id.* at ¶ 4. Pursuant to MDOC policy, whenever a prisoner's state issued clothing is lost, Scrivens holds an administrative hearing regarding the clothing and, in the absence of any evidence that the clothing was lost by the laundry, unit staff, or any other reason beyond the prisoner's control, Scrivens determines that the prisoner is responsible for the cost of the lost clothing. *Id.* at ¶ 5.

Scrivens' proposed disposition of the claim was to remove $8.20 from plaintiff's account for the willful loss of state-issued items pursuant to MDOC, Policy Directive 04.07.110. *See* NOI. Scrivens issued an administrative hearing report ("AHR")on February 22, 2007, finding that plaintiff was responsible for contributing to the loss of his state issued clothing as determined at Step I of the grievance process. *See* AHR, attached to defendants' brief as exh. 8, attachment D-2. In the AHR, plaintiff was charged $8.20, which was 30% of the clothing's cost. *Id.*

In his affidavit, plaintiff states that his clothing was properly numbered when placed in the laundry bag, that the bag was returned with a hole in its side, that his clothing was missing and that the bag was so damaged that RUO Winters had to order a new one. Plaintiff's Add. at ¶¶ 6-7 (docket no. 50). Plaintiff states that he had only one pair of pants for more than four months. *Id.* at ¶ 3. He was forced to go to meals during winter weather in his "state shorts and long johns" while his only pair of state-issued pants were in the laundry. *Id.* at ¶ 4. Plaintiff was denied the right to go to the chow hall one morning because an officer told him that he could not wear long johns under his shorts. *Id.* at ¶ 5.

### 3. Discussion

#### a. RUO Winters

Viewing the facts in the light most favorable to plaintiff, it does not appear that RUO Winters played any role in the decision to replace plaintiff's clothing. Winters did nothing more than talk to plaintiff about the missing clothing and refer him to the quartermaster. Accordingly, RUO Winters is entitled to summary judgment on this claim.

#### b. Storekeeper Allen and ARUS Scrivens

Plaintiff has presented sufficient probative evidence to support an Eighth Amendment claim against Storekeeper Allen and ARUS Scrivens. Defendants do not contest plaintiff's statement he had only one pair of pants for over four months. Questions of fact exist with respect to whether plaintiff's clothes were marked, the circumstances surrounding the loss of the clothing, and whether plaintiff had adequate clothing.

While defendants acknowledge that clothing is a "core" Eighth Amendment requirement, *see, e.g., Grubbs v. Bradley*, 552 F. Supp. 1052, 1122 (M.D. Tenn. 1982), they provide no evidence addressing whether they met this core requirement in this case. According to plaintiff, he was forced to wear shorts and longjohns during the winter months when his only pair of pants wew being laundered. As the court observed in *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992):

> Exposure to Michigan winters without adequate clothing can obviously inflict pain. No legitimate government interest is served by withholding adequate clothing. . .

*Knop*, 977 F.2d at 1012-13.

Based on this record, defendants Allen's and Scrivens' motion for summary judgment should be denied with respect to plaintiff's Eighth Amendment claim.

#### C. Retaliation claim against ARUS Scrivens

Next, plaintiff alleges that ARUS Scrivens' actions in conducting an administrative hearing after filing his grievance constituted retaliation.[3] To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute;  2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "If the plaintiff is able to make such a showing, the defendant has the burden of showing that the same action would have been taken absent the plaintiff's protected conduct." *Id.*  If defendant can show that she would have taken the same action in the absence of the protected activity, then she is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399.

Defendants contend that the administrative hearing was not a retaliatory act, because they were required to issue the NOI and hold the hearing pursuant to Policy Directive 04.07.110.  The Policy Directive states that, upon receipt of an NOI, the ARUS will conduct a hearing to determine if the prisoner willfully lost or willfully destroyed the state-issued items.  *See* Policy

---

[3] Defendant's summary judgment motion does not address plaintiff's claim that the ARUS Scrivens violated his due process rights by holding the administrative hearing before the related grievance was resolved.  There is no apparent rule, however, that the grievance be resolved first.  The whole point of filing a grievance is to obtain resolution of a perceived problem, and in this instance the path to resolution lay through an administrative hearing.

12

Directive 04.07.110 p. 8 at no. 1. The Policy Directive further states that "[p]risoners shall be required to pay restitution for items they willfully lost or willfully damaged." *See* Policy Directive 04.07.110 ¶ C. The record reflects that plaintiff reported the loss of his clothes in December 2006, that he met with Storekeeper Allen that month, and that he filed a grievance on January 27, 2007. The LRF staff investigated the grievance, and concluded that there was no loose clothing with plaintiff's number on it. The NOI was issued on February 16, 2007 as part of the Step I response to the grievance.

As previously discussed, the copy of plaintiff's Step I grievance submitted to the court is difficult to read. However, it is discernable from the grievance that plaintiff sought relief for the loss of his pants and shorts in the laundry. The NOI resulted from the facts ascertained while investigating the grievance. Specifically, the Step I response stated that "[n]o evidence has been presented at step I to verify that any loss of anything actually occurred." Exh. 8-A attached to defendants' brief. The Step I response determined that there was no violation of policy and procedure. *Id.* The response further stated:

> [T]he prisoner DID contribute to the alleged loss by not assuring his clothing was properly numbered AND the alleged loss was NOT caused by staff action or failure to act since no evidence has been presented that a loss even occurred. The property was NOT in the sole control of the Department when allegedly lost. A Notice of Intent to Conduct an Administrative Hearing should be completed by the appropriate housing unit staff so that the state may recoup the loss because this prisoner has not taken care of state issue items issued to him in a responsible manner.

*Id.*

Plaintiff filed his grievance to resolve the issue of his missing pants and shorts. The purpose of the grievance process is to investigate and resolve claims by prisoners such as plaintiff. The NOI was nothing more than a continuation of the MDOC investigation which would have occurred, in any event, to determine the whereabouts of plaintiff's state issue clothing. Furthermore,

the policy directives required the MDOC to hold an NOI to determine if the prisoner willfully lost or willfully destroyed the state-issued items. *See* Policy Directive 04.07.110. Under these circumstances, defendants have demonstrated that they would have taken the same action with respect to investigating the loss of the state issue clothing even if plaintiff had not filed a grievance. Accordingly, defendant Scrivens' motion for summary judgment should be granted with respect to the retaliation claim.

### D. Qualified Immunity

Finally, defendants contend that are entitled to qualified immunity. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Sixth Circuit applies a three-step inquiry to determine the existence of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 729 (6th Cir. 2007), *citing Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*). When a defendant raises the issue of qualified immunity in a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1774-75 (2007). In qualified immunity cases, this typically requires the court to adopt "the plaintiff's versions of the facts." *Id.* at 1775.

Defendants contend that they are entitled to qualified immunity because requiring plaintiff to pay for his lost clothing does not violate any of his constitutional rights. Defendants' brief at 14. Defendants' argument does not address plaintiff's claim that he was provided with only one pair of pants for four months, which effectively deprived him of pants at the time when his only pair of pants were in the laundry. Adopting plaintiff's version of the facts, the court concludes that an Eighth Amendment violation occurred. Accordingly, defendants are not entitled to qualified immunity.

### V.      Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 41) be **GRANTED** as to all claims against defendants Patricia Caruso, Mary Berghuis, Rick Smith, Bobbi Smith, Jeffery Minnerick, and Johnny Winters, and as to plaintiff's retaliation claim against defendant Joniva Scrivens, and be **DENIED** as to plaintiff's Eighth Amendment claims against defendants Joniva Scrivens and Barbara Allen.


Entered: <u>February 11, 2009</u>              <u>   /s/ Hugh W. Brenneman, Jr.                </u>
                                                Hugh W. Brenneman, Jr.
                                                U.S. Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).